217 So.2d 293 (1968)
DADE COUNTY CLASSROOM TEACHERS' ASSOCIATION, INC., a Florida Corporation Not for Profit, Appellant,
v.
Leonard H. RUBIN, Etc., et al., Appellees. (Three Cases)
Nos. 37147-37149.
Supreme Court of Florida.
December 10, 1968.
Rehearing Denied December 20, 1968.
*294 Tobias Simon, Miami, for appellant.
Leonard H. Rubin and Bolles, Goodwin, Ryskamp & Ware, Miami, for appellees.
Earl Faircloth, Atty. Gen., and T.T. Turnbull, Chief Trial Counsel, and Marion E. Sibley, Miami Beach, amici curiae.
DREW, Justice.
Consolidated for consideration and disposition in this cause are direct appeals from an interlocutory injunction entered against the appellant Association in the Dade County Circuit Court and from an order of that Court finding the Association in contempt and imposing a $30,000 fine for violation of the injunction. By motion to dissolve the injunctive order, denied by the trial court, the appellant Association alleged deprivation of rights of speech, assembly and petition under amendments 1 and 14, U.S. Constitution, and attacked the validity of F.S. Sec. 839.221, F.S.A.[1]
*295 These proceedings were initiated by a complaint of February 20, 1968, filed by the appellee Rubin and styled an action as taxpayer and member of a class of persons having an interest (as parent or next friend of children in the Dade County public schools and as beneficiaries of the contracts which the defendant Association was alleged to have conspired to breach) in preventing a strike or breach of contracts by teachers.[2] The Dade County Board of Public Instruction was also made a party defendant, but the complaint asked no relief against the Board and that body did not seek either to obtain or prevent injunctive relief in these proceedings.
Based on testimony adduced on order to show cause,[3] the court by temporary restraining order of February 23 enjoined the association and its members, as a part of any scheme or design to strike against the public schools or the Board of Public Instruction, from:
"* * * counseling, enticing, picketing the schools coercing or otherwise undertaking to persuade or induce any teacher with whom there has been executed a written contract with the Dade County School Board, to fail, decline or refuse to carry out and perform such teacher's obligations under such contract, and from counseling, enticing, coercing or otherwise seeking to bring about concerted and massive refusal of the teachers to perform their duties under their contracts, or from advising children not to attend school, or from otherwise performing any act or acts which would bring about a strike or work stoppage or a threat to strike on the part of the teachers under contract with the Dade County School Board, or prevent the resumption of normal activities of the teachers and students."
We are unable to determine from the record before us that the injunction entered against appellant was based on Sec. 839.221, supra, since neither the complaint nor order of the court makes any reference to the provisions of the statute, but both relate only to concerted action designed to effect a work stoppage by teachers. The constitutional issues, in any event, as well as that of statutory validity if relevant, are fully determined against appellant's contentions by the opinion of this Court in the Pinellas County Classroom Teachers Assn., Inc. et al. v. B.P.I., of Pinellas County, filed Sept. 18, 1968, Fla., 214 So.2d 34.
There is in our opinion no merit to other objections by appellant relating to alleged ambiguity of the restraints imposed and to jurisdictional questions raised *296 by simultaneous federal court proceedings. Any doubt on the latter point was clearly resolved by order of remand entered immediately before the February 23rd injunction which forms the predicate for the contempt adjudication challenged by appellant.
Plaintiff's motion for determination of contempt alleged among other things that the Association held a mass meeting of several thousand teachers on February 26, a school day, and distributed literature stating "why the Dade County Schools are closed and why the Dade County teachers have resigned and what the teachers of Dade County are asking for in order to come back to work." The contempt order states:
"* * * it is clear and undisputed from the testimony of the defendants and other witnesses that the said defendants * * * have willfully and flagrantly disobeyed and defied the injunctive orders of this Court entered on February 22 and 23, 1968. Our form of government is based on the concept of law that any person who disagrees with lawful orders of Court may by orderly legal procedure have those Orders reviewed by appeal. No one has the right to take the law into his own hands and willfully disregard and violate any Court order. Educators must realize that to resort to such action leads to anarchy and if followed by other citizens would completely destroy our Democratic system." (e.s.)
Among the grounds for reversal of this order asserted by appellant is the court's rejection of its request for jury trial on the charge of contempt. We believe, from a consideration of the court's stated purpose and the nature of the sanctions imposed,[4] that appellant correctly characterizes the proceeding as one for criminal contempt for which the rules in effect at that time clearly prescribed a right of trial by jury.[5]
Appellant at the outset moved in writing for jury trial in accordance with the rules.[6] *297 The court erred in denying this motion, and the ensuing order imposing penalty for contempt must therefore be reversed and the cause remanded for disposition in accordance with this opinion.
It is so ordered.
ROBERTS and HOPPING, JJ., concur.
ERVIN, J., concurs specially with opinion.
CALDWELL, C.J., and ADAMS, J., dissent.
ERVIN, Justice (concurring specially).
I concur in the foregoing opinion. The applicable law involving reciprocal contract rights of school authorities and teachers now has been adjudicated and declared herein and in Pinellas County Classroom Teachers Ass'n., Inc. et al. v. Board of Public Instruction of Pinellas County, Fla., 214 So.2d 34. This suffices to settle a theretofore unadjudicated and uncertain area of the law. The ancillary issue involving the validity of the trial court's contempt order and penalty, we decide adversely to Appellees inasmuch as the order and penalty were entered below without benefit of the then required jury determination. No good purpose would be served at this date in visiting a contempt penalty on Appellants. Thus by our holding we do not disturb a now quiet situation by authorizing a contempt penalty in a previously unsettled area of law; rather, we have made definitive decisions that are applicable to the future and spell out the contract rights of the public, the school authorities, and the teachers, as well as the power of contempt of courts in future cases involving such rights.
NOTES
[1] "839.221 Governmental officers and employees; prohibited participation in strikes or membership in organizations that assert right to strike against government employer. 

(1) No person shall accept or hold any office, commission or employment in the service of the state, of any county or of any municipality, who:
(a) Participates in any strike or asserts the right to strike against the state, county or any municipality; or
(b) Is a member of an organization of government employees that asserts the right to strike against the state, county or any municipality, knowing that such organization asserts such right.
(2) All employees who comply with the provisions of this section are assured the right and freedom of association, self-organization, and the right to join or to continue as members of any employee or labor organization which complies with this section, and shall have the right to present proposals relative to salaries and other conditions of employment through representatives of their own choosing. No such employee shall be discharged or discriminated against because of his exercise of such right, nor shall any person or group of persons, directly or indirectly, by intimidation or coercion, compel or attempt to compel any such employee to join or refrain from joining a vocational or a labor organization."
[2] No question is raised as to plaintiff's right to bring the suit or the sufficiency of the complaint to state a class or representative action. Our disposition of the appeals does not, of course, constitute an adjudication of those rights.
[3] "THIS CAUSE came on before me, the undersigned, one of the Judges of the above-styled Court, upon prayer for entry of a Temporary Injunction in a verified Complaint, and it appearing that the Plaintiffs have no adequate remedy, and that irreparable damage is being done, and that an unlawful strike by public employees appears to be taking place, and that no adverse effect will be visited upon the Defendants by the entry of an order to appear at a short date upon a hearing for a Temporary Injunction pending a full hearing in this cause, it is now

ORDERED That the Defendants are directed to appear before me, in my Chambers in the Dade County Courthouse, Miami, Florida, at 1 pm Thursday, the 22nd day of February, 1968, and show cause, if any they can, why a Temporary Injunction should not be entered against the Defendants, CLASSROOM TEACHERS ASSOCIATION, individually, and as representative of all of the teachers in the public schools in Dade County similarly situated, and the said teachers, to enjoin them from striking, and from further conspiring to strike, until full testimony is taken in this cause, and to require the Defendant teachers to specifically forthwith return to their full duties and perform their contracts."
[4] * * in civil contempt it has been said that the contemnor `carries the key of his prison in his own pocket.' * * *
"In a civil contempt proceeding an offended party to the cause is primarily seeking relief, personal and private to himself, as distinguished from punishment for conduct offensive to the public or disrespectful to the court and its authority. On the other hand, a contempt proceeding criminal in nature is instituted solely and simply to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court. Customarily when imprisonment is ordered it is generally for a fixed term and is administered as punishment for an act committed rather than as coercion to compel the contemnor to do something which he has theretofore failed and refused to do. * * *"
Demetree v. State ex rel. Marsh, Fla. 1956, 89 So.2d 498; See also Schoenthal v. Schoenthal, Fla.App. 1962, 138 So.2d 802; Wallens v. Buchanan, Fla.App. 1964, 168 So.2d 687.
[5] F.R.C.P. 1.840(a) (4), 33 F.S.A., subsequently amended, provided at the time of this proceeding:

"All issues of law shall be heard and determined by the judge; all issues of fact shall be heard and determined by a jury of six persons selected as in criminal cases, unless waived by the defendant."
[6] "MR. SIMON: Now, if Your Honor please, may I inquire of the Court what it is that we are presently facing in this court? I have before me an order for hearing for contempt. I would like to be advised by the Court whether this is a direct contempt, indirect contempt, civil contempt or criminal contempt.

THE COURT: Well, I don't think we have to go into definitions, Mr. Simon. You are here, the defendants are here pursuant to an order of this Court on a contempt procedure and we are going to proceed today.
MR. SIMON: Well, if Your Honor please 
THE COURT: As far as the definition is concerned, why, I am not going to get into legal dissertations as to the various definitions and various types of contempt. So 
MR. SIMON: Then 
THE COURT: I don't believe there is any motion before the Court.
MR. SIMON: There is, Your Honor. There is such a motion. I have prepared and filed with the Clerk at this time a response to the order for rule to show cause. I have submitted to Your Honor demand for trial by jury * * *.
We will be obliged to proceed in any manner that Your Honor orders but we are entitled clearly either to a trial by jury or to be advised by this Court that this is a civil contempt proceeding.
THE COURT: I am denying the motion for trial by jury.
Let's proceed in the case."